IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

RONNIE DECARTES JOHNSON and )    CIVIL NO. 06-00106 HG-KSC
DANIELLE LEIALOHA WATABAYASHI- )
JOHNSON,                      )    **ORDER GRANTING DEFENDANT**
                             )    **NEELEY & ANDERSON LLP'S**
                             )    **MOTION FOR PARTIAL DISMISSAL**
            Plaintiffs,      )    **OF COMPLAINT**
                             )
        vs.                  )
                             )
ASSOCIATION OF APARTMENT OWNERS )
OF KE AINA KAI TOWNHOMES;     )
HAWAIIANA MANAGEMENT COMPANY,  )
LTD., a Hawaii corporation; and )
NEELEY & ANDERSON LLP, a Hawaii )
limited liability partnership )
                             )
            Defendants.      )
                             )
_____ )

**ORDER GRANTING DEFENDANT NEELEY & ANDERSON LLP'S
MOTION FOR PARTIAL DISMISSAL OF COMPLAINT**


Plaintiffs Ronnie Decartes Johnson and Danielle Leialoha Watabayashi-Johnson ("Plaintiffs"), have sued Defendants the Association of Apartment Owners of Ke Aina Kai Townhomes ("AOAO"), Hawaiiana Management Company, Ltd. ("Hawaiiana"), and Neeley & Anderson LLP ("Neeley") (collectively, "Defendants"), alleging, *inter alia*, that various provisions of Chapter 514A of the Hawaii Revised Statutes are unconstitutional because such provisions require condominium owners to pay disputed maintenance fees, including disputed attorneys' fees, before having an

opportunity to contest those fees.

With regard to Defendant Neeley & Anderson LLP ("Neeley"), Plaintiffs allege that Neeley committed various torts by serving as legal counsel for the AOAO with regard to the allegedly improper collection of AOAO maintenance fees, assessments, and attorneys' fees from Plaintiffs.  Neeley has moved for dismissal of Count Three (intentional infliction of emotional distress), Count Four (negligent infliction of emotional distress), Count Six (wrongful foreclosure and slander of title), Count Seven (unfair and deceptive trade practices in violation of Haw. Rev. Stat. § 480-1, et seq.), and Count Eight (breach of implied covenant of good faith and fair dealing).

Plaintiffs' allegations against Neeley do not satisfy the elements for intentional or negligent infliction of emotional distress, Neeley does not owe a duty to Plaintiffs, and there is no contract between Plaintiffs and Neeley under which an implied covenant of good faith and fair dealing could arise.  Neeley's motion for partial dismissal is GRANTED without prejudice as to Counts Three, Four, and Seven and with prejudice as to Counts Six and Eight.  The Court GRANTS Plaintiffs leave to amend their Complaint as to Counts Three, Four, and Seven within thirty (30) days from the date of this Order, until September 25, 2006.  If Plaintiffs fail to amend by September 25, 2006, the Court will dismiss Counts Three, Four, and Seven with prejudice.

## PROCEDURAL HISTORY

On December 19, 2005, Plaintiffs filed their Complaint for Declaratory Relief and for Damages in the Circuit Court of the First Circuit of the State of Hawaii.  On February 21, 2006, Defendant Neeley removed the action to this Court.

On February 26, 2006, Neeley filed a Motion for Partial Dismissal of Complaint ("Motion", Doc. 4.)

On March 8, 2006, Defendants AOAO and Hawaiiana filed a statement of no opposition to Neeley's Motion (Doc. 9.)

On May 12, 2006, Plaintiffs filed their opposition to Neeley's Motion ("Plaintiffs' Opp.", Doc. 14.)

On May 19, 2006, Neeley filed its reply ("Reply", Doc. 15.)

On May 30, 2006, this matter came on for hearing.

## BACKGROUND

For the purposes of ruling on Defendant Neeley & Anderson LLP's motion for partial dismissal of the Complaint the Court takes all of Plaintiffs' allegations as true.  Plaintiffs are the owners of, and are living in, Unit No. 2R6 at the Ke Aina Kai Townhomes Condominium Project in Ewa Beach, Hawaii ("Subject Property").  (Compl. ¶ 1.)  Plaintiffs have sued the Association of Apartment Owners of Ke Aina Kai Townhomes ("AOAO"), Hawaiiana Management Company, Ltd. ("Hawaiiana"), Neeley & Anderson LLP ("Neeley"), and Does 1-20.  Neeley is a Hawaii limited liability

3

law partnership.  (Compl. ¶ 4.)  Neeley served as legal counsel
for the AOAO, including with regard to the collection of AOAO
maintenance fees and other assessments.  (Compl. ¶ 4.)

Plaintiffs had fallen behind in their maintenance fee
payments (Compl. ¶ 6.)  The delinquent amount is unclear from
Plaintiffs' Complaint.  Plaintiffs take issue with how, when, and
to what delinquencies the AOAO applied their payments.  (Compl.
¶¶ 9-10.)

In August 2004, Neeley filed a lien and foreclosure lawsuit
on behalf of the AOAO entitled <u>AOAO of Ke Aina Townhomes v.</u>
<u>Ronnie Decartes Johnson, et al.</u>, Civil No. 04-1-1402-08, as a
result of which Plaintiffs were charged more legal fees.  (Compl.
¶ 11.)  On September 7, 2004, Plaintiffs paid Neeley $9,161.09 to
remove the AOAO's lien and obtain dismissal of the foreclosure
lawsuit.  (Compl. ¶ 21.)  Only then were Plaintiffs able to
institute arbitration proceedings challenging the disputed
assessments.  (<u>Id</u>.)  Plaintiffs contend that "[t]he impact of the
accompanying  uncertainties, emotional stress, and financial
hardship . . . has been overwhelming." (Compl. ¶ 22.)
Plaintiffs further contend that to pay the disputed assessments
"they had to delay paying their electric bills, their Queen's
Medical Center bills which were eventually sent to a collection
agency, the medical bills for themselves and their children,
their credit cards, and their telephone bills, which created

4

severe emotional and physical stress for each of them."  (Compl. ¶ 23.)

The crux of Plaintiffs' complaint is a due process and equal protection challenge under the United States Constitution to Hawaii's statutory scheme governing condominium property regimes. See Haw. Rev. Stat. § 514A-1, et seq.  Plaintiffs contend that various provisions of Chapter 514A are unconstitutional because, among other things, they require apartment owners to pay disputed maintenance fees, including disputed attorneys' fees, before challenging the propriety and amount of such fees.  See Haw. Rev. Stat. § 514A-90(c)(5) and (d), § 514A-121(b)(5).

The Hawaii statutes generally allow the AOAO to recover reasonable attorneys' fees incurred by or on behalf of the association for collecting any delinquent assessments against an owner's apartment and foreclosing any lien thereon.  Haw. Rev. Stat. § 514A-94(a)(1) and (2).

Plaintiffs' Complaint alleges nine causes of action.  Neeley has moved to dismiss the following counts:

Count Three - Intentional Infliction of Emotional Distress Against All Defendants:  "The acts complained of above committed by the Defendants were intentionally and/or recklessly done in complete disregard of the rights, feelings, health, and finances of [Plaintiffs], inflicting severe emotional distress on them, including pain and suffering, stress, anxiety, headaches, and

sleepless nights, with knowledge of same . . . " (Compl. ¶ 31.)

Count Four - Negligent Infliction of Emotional Distress Against All Defendants:  "The acts complained of above committed by the Defendants were negligently done in complete disregard of the rights, feelings, health, and finances of [Plaintiffs], inflicting severe emotional distress on them, including pain and suffering, stress, anxiety, headaches, and sleepless nights, with knowledge of same . . . " (Compl. ¶ 32.)

Count Six - Wrongful Foreclosure Against All Defendants: "[Plaintiffs] are entitled to actual damages against all Defendants for damages resulting from the wrongful and erroneous liening of [the Subject Property], for the slander of their title thereby, and for the filing of a wrongful foreclosure suit as aforesaid, . . . " (Compl. ¶ 34.)

Count Seven - Unfair and Deceptive Acts and Practices Against All Defendants:  "The acts complained of as aforesaid committed by Defendants constitute unfair and deceptive acts and practices, for which [Plaintiffs] are entitled to treble their actual damages . . . " (Compl. ¶ 35.)

Count Eight - Breach of Good Faith and Fair Dealing Against All Defendants:  "The acts complained of as aforesaid committed by all Defendants constitute breaches of good faith and fair dealing, implied covenants within the terms and conditions of said CONDOMINIUM DOCUMENTS, entitling [Plaintiffs] to an award of

their actual damages, . . . " (Compl. ¶ 36.)

## STANDARD OF REVIEW

In evaluating a complaint pursuant to a motion to dismiss, the court must presume all factual allegations to be true and draw all reasonable inferences in favor of the non-moving party. See Roe v. City of San Diego, 356 F.3d 1108, 1111-12 (9th Cir. 2004); Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998); see Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (the complaint must be liberally construed, giving the plaintiff the benefit of all proper inferences). Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

If dismissal is warranted, dismissal should be with leave to amend unless it is clear that amendment could not possibly cure the complaint's deficiencies. Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1296 (9th Cir. 1998). That is, leave to amend should be denied where the court determines that the "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986).

The court is not required to accept legal conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be drawn from the facts alleged. Clegg v. Cult

Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing

Papasan v. Allain, 478 U.S. 265, 286 (1986)). Conclusory

allegations of law and unwarranted inferences are not sufficient

to defeat a motion to dismiss.   See Pareto, 139 F.3d at 699

(citation omitted).

### ANALYSIS

**Count Three - Intentional Infliction of Emotional Distress
Against All Defendants**

Plaintiffs allege that Defendants' actions "were

intentionally and/or recklessly done in complete disregard of the

rights, feelings, health, and finances of [Plaintiffs],

inflicting severe emotional distress on them, including pain and

suffering, stress, anxiety, headaches, and sleepless nights, with

knowledge of same . . . " (Compl. ¶ 31.)

Under Hawaii law, the elements of intentional infliction of

emotional distress ("IIED") are:

> (1) that the act allegedly causing the harm was
> intentional or reckless, (2) that the act was
> outrageous, and (3) that the act caused (4) extreme
> emotional distress to another.

Enoka v. AIG Hawaii Ins. Co., Inc., 128 P.3d 850, 872 (Haw. 2006)

(upholding summary judgment in favor of defendant on IIED claim

where conduct did not rise to level of outrageousness as construed

in Hawaii case law) (citation omitted).  The term "outrageous" has

been construed to mean "without just cause or excuse and beyond all

8

bounds of decency." Id. (citing Lee v. Aiu, 936 P.2d 655, 670 n.12 (1997) (internal quotation marks and citations omitted).

In establishing this standard, Hawaii courts have incorporated the definition of "outrageous" found in the Restatement (Second) of Torts which explains the type of "outrageous" conduct that makes a claim for intentional infliction of emotional distress actionable:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Soone v. Kyo-Ya Co., Ltd., 353 F. Supp. 2d 1107, 1116-17 (D. Haw. 2005) (quoting Ross v. Stouffer Hotel Co. (Hawaii) Ltd., 879 P.2d 1037, 1048 n.12 (Haw. 1994)(citing Restatement (Second) of Torts § 46 comment d (1965)).

Hawaii courts have recognized the courts' role in determining whether, in the first instance, the plaintiff has stated an IIED claim.  Id. at 1117 ("whether the actions of the alleged tortfeasor are unreasonable or outrageous is for the court in the first instance, although where reasonable persons

may differ on that question it should be left to the jury")
(citing Ross, 879 P.2d at 1048).    In Tseu v. Jeyte, 962 P.2d
344 (Haw. 1998), for instance, the Hawaii Supreme Court upheld
the circuit court's dismissal of counterclaims for intentional
and negligent infliction of emotional distress against the Hawaii
Civil Rights Commission ("HCRC").   The HCRC had filed a complaint
against the counterclaimants alleging that they had committed an
unlawful discriminatory practice by turning away prospective
tenants for a rental cottage.   Id. at 346.   The HCRC sent
counterclaimants a letter which, among other things, demanded
that they pay monetary damages and publish, at their expense, a
notice in the newspaper that they had engaged in unlawful
discriminatory activities.   Id. The counterclaimants filed
counterclaims for IIED and NIED.   Id. With regard to the IIED
claim, counterclaimants alleged that the letter was outrageous,
unreasonable, and calculated to intimidate, coerce, embarrass,
and hurt counterclaimants.   Id.   The Hawaii Supreme Court
affirmed dismissal of the IIED claim, finding that the letter was
not outrageous and that the purpose of the letter – to settle the
lawsuit – was, itself, legitimate.   Id. at 352.

In Soone, this Court, applying Hawaii law, held that the
actions of defendant's agent in telling an employee that he was
terminated and could not return to the employer's premises
(allegedly in violation of the Americans with Disabilities Act)

10

did not come close to meeting the standard for IIED.  <u>Soone</u>, 353 F. Supp. 2d at 1117; <u>see</u> <u>King v. AC & R Advertising</u>, 65 F.3d 764, 769-770 (9th Cir. 1995)(upholding summary judgment in favor of defendants on IIED claim because defendants' conduct in making discriminatory, age-related comments about plaintiff was not extreme and outrageous) (applying California law).

In <u>Keiter v. Penn Mut. Ins. Co</u>., 900 F. Supp. 1339, 1348 (D. Haw. 1995), this Court likewise dismissed plaintiffs' IIED claim for failure to state a claim as a matter of law.  In <u>Keiter</u>, plaintiffs alleged, among other things, that the defendant insurer failed to disclose that a drop in interest rates could erode the plaintiffs' equity in their life insurance policy and that defendant deliberately and fraudulently sold such policies during a period of high interest rates.  <u>Keiter</u>, 900 F. Supp. at 1341.  The court held that "[r]easonable persons could not differ over whether the conduct Plaintiffs allege is utterly intolerable in a civilized society." <u>Id</u>. at 1348.  Such conduct did not satisfy the "outrageous" standard.  <u>Id</u>

Plaintiffs' theory of liability as to Neeley is based on Neeley's legal representation of the AOAO in the collection of outstanding assessments and fees owed by Plaintiffs to the AOAO. Neeley charged the AOAO legal fees in connection with its representation of the AOAO in its dispute with Plaintiffs over outstanding assessments and fees.  (Compl. ¶¶ 8-10.)  Neeley

11

served as legal counsel for the AOAO in filing the lien and
foreclosure action in state court.  (Compl. ¶ 11.)  The AOAO, in
turn, sought to collect the legal fees incurred from the
Plaintiffs as provided by Haw. Rev. Stat. § 514A-94(a).  The crux
of Plaintiffs' Complaint is that Plaintiffs, and others similarly
situated, are unable to challenge the propriety of the legal fees
and assessments before having to pay them.

If Plaintiffs dispute the propriety of the outstanding
assessments, such as the manner in which the AOAO applied their
monthly maintenance fees and whether the AOAO should have
incurred legal fees by using legal counsel to respond to their
complaints (Compl. ¶ 9), their remedy is against the AOAO not
against its attorneys.  Plaintiffs may, as they have, also
challenge the state statutory scheme as unconstitutional.

## A.   Neeley's Alleged Actions Are Not "Outrageous"

Plaintiffs have not alleged any facts which would make
Neeley's attempt to enforce the AOAO's right to collect fees as
permitted by Chapter 514A of the Hawaii Revised Statutes
"outrageous".  Statutes enacted by the legislature are
presumptively constitutional until a court holds otherwise.  See
Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan, 953 P.2d
1315, 1345-46 (1998).  Neeley's conduct is not, as a matter of
law, "without just cause or excuse and beyond all bounds of

decency."   As the court in <u>Keiter</u> noted, "[i]f courts do not in clear cases exercise their review of such claims in the first instance, the standard of outrageous will be expanded into an unreviewable jury question, diluting the importance of the cause of action and the available relief." <u>Keiter</u>, 900 F. Supp. at 1348.  Further, allowing a party in litigation to sue an adverse party's lawyer for IIED under the facts alleged in this case would be poor policy.  Exposing legal counsel to liability in this instance would chill effective advocacy by discouraging attorneys from taking cases for fear of being sued directly for their clients' alleged wrongs.

Count Three, Plaintiffs' IIED claim as to Neeley, is **DISMISSED** because they have not alleged any facts which would make Neeley's attempt to enforce the AOAO's right to collect fees as permitted by Chapter 514A "outrageous".

**Count Four - Negligent Infliction of Emotional Distress**

Plaintiffs allege that Defendants' actions "were negligently done in complete disregard of the rights, feelings, health, and finances of [Plaintiffs], inflicting severe emotional distress on them, including pain and suffering, stress, anxiety, headaches, and sleepless nights, with knowledge of same . . . " (Compl. ¶ 32.)

The elements of the cause of action for negligent infliction

13

of emotional distress ("NIED") are: (1) that the defendant engaged in negligent conduct; (2) that the plaintiff suffered serious emotional distress; and (3) that such negligent conduct of the defendant was a legal cause of the serious emotional distress.  Tran v. State Farm Mut. Auto. Ins. Co., 999 F. Supp. 1369, 1375 (D. Haw. 1998) (citing Calleon v. Miyagi, 876 P.2d 1278 (Haw. 1994).

**A.   Plaintiffs Have Not Alleged That Neeley Engaged in Actionable Negligent Conduct**

Plaintiffs' NIED claim fails as a matter of law.  Plaintiffs have not alleged that Neeley engaged in any actionable negligent conduct.  "[A]n NIED claim is nothing more than a negligence claim in which the alleged actual injury is wholly psychic and is analyzed 'utilizing ordinary negligence principles.'"  Doe Parents No. 1 v. State, Dept. of Educ., 58 P.3d 545, 580 (Haw. 2002).  An essential element of a negligence claim is that the defendant owed the plaintiff a duty of care.  See Cootey v. Sun Inv., Inc. 718 P.2d 1086, 1090 (Haw. 1986) ("Fundamental in any determination of liability for negligence is the existence of duty owed by the putative tortfeasor to the injured person.").  It is well recognized that an attorney does not generally owe a duty of care to a non-client such as an opposing party.  Bush v.

14

Rewald, 619 F. Supp. 585, 596-97 (D. Haw. 1986) ("An attorney can

be liable for malpractice only to his client, or possibly to a

third party for whose benefit he undertakes to provide services,

such as the beneficiary of a will. . . . Unless a lawyer knew or

should have known that his advice would be transmitted to and

relied on by investors in the client firm, or unless the

investors were intended beneficiaries of the advice, the lawyer

has no duty to them . . . ") (citation omitted); Toste Farm Corp.

v. Hadbury, Inc., 798 A.2d 901, 907 (R.I. 2002) ("We agree that

an attorney has no general duty to the opposing party, and

therefore, a third party does not ordinarily have standing to

pursue a claim for tortious interference against his adversary's

attorney".); Bovee v. Gravel, 811 A.2d 137, 139-40 (Vt. 2002)

("The longstanding common law rule is that an attorney owes a

duty of care only to the client, not to third parties who claim

to have been damaged by the attorney's negligent representation.

See Savings Bank v. Ward, 100 U.S. 195, 200, 25 L.Ed. 621 (1879)

("Beyond all doubt, the general rule is that the obligation of

the attorney is to his client and not to a third party ....);

Clagett v. Dacy, 47 Md. App. 23, 420 A.2d 1285, 1287 (1980) ("The

traditional rule, in Maryland and elsewhere, is that an

attorney's duty of diligence and care flows only to his direct

client/employer, and that, whether in an action of contract or
tort, only that client/employer can recover against him for a
breach of that duty.")); Chapman Children's Trust v. Porter &
Hedges, L.L.P., 32 S.W.3d 429, 440 (Tex. App. 2000) ("there is no
right of recovery against an attorney for filing motions, even if
that filing is frivolous or without merit, because 'making
motions is conduct an attorney engages in as part of the
discharge of his duties in representing a party in a lawsuit.'").

A duty imposed upon an attorney to protect an interest of
the client's adversary would necessarily conflict with the duty
owed to his own client.  Winters v. Schulman, 977 P.2d 1218, 1225
(Utah App. 1999) ("[t]he basis of our judicial system is the
adversarial model, a concept which is foreign to the placement of
a duty upon counsel to represent the best interests of both
sides") (citing Joan Teshima, Annotation, *Attorney's Liability,
to One Other Than Immediate Client, for Negligence in Connection
with Legal Duties,* 61 A.L.R.4th 615, 625 (1988) ("the
overwhelming weight of authority holds that an attorney owes no
legal duty to his clients' adversary the breach of which would
support a negligence action")); cf. Blair v. Ing 21 P.3d 452,
467-68 (Haw. 2001) (imposition of a duty between attorney and
non-client will beneficiary would not create conflicting

16

obligations to the testator because the beneficiary will have no rights under the will, and no cause of action against the attorney, before the testator's death and the testator is always free to change the beneficiary under the will; "no conflict of interest under circumstances, such as [in this] case, where a beneficiary seeks to enforce an attorney's duty to fulfill his or her client's intent").

Several courts have also specifically rejected the notion that an attorney's violation of the Code of Professional Responsibility could give rise to liability to a third-party. See Brooks v. Zebre, 792 P.2d 196, 201 (Wyo. 1990) ("We turn then to the contention of Brooks and the Bank that they are entitled to a cause of action arising out of an asserted violation of the rules adopted by this court relating to ethical conduct of attorneys. The clear rule is that no private cause of action in favor of a non-client can be found attributable to violations of the disciplinary rules relating to attorneys."); Mozzochi v. Beck, 529 A.2d 171, 176 (Conn. 1987) ("Every court that has examined this question has concluded that the Code of Professional Responsibility does not, per se, give rise to a third party cause of action for damages.").

There is no attorney-client relationship between Plaintiffs and Neeley.  Neeley's client is the AOAO.  The AOAO retained

17

Neeley to collect amounts owed by, and to ultimately sue, Plaintiffs.  Neeley was adverse to, and obviously did not represent or intend to benefit, Plaintiffs in its representation of the AOAO in these circumstances.

Although courts, including the Hawaii Supreme Court, have recognized a duty to a non-client in exceptional circumstances where the attorney's conduct is fraudulent or where the attorney's employment constituted a third-party beneficiary contract, such as in the context of will drafting, Plaintiffs have not made such allegations in this case.  See Blair, 21 P.3d at 465-68 (recognizing attorney's duty to non-client intended beneficiary in estate planning context); Toste Farm Corp., 798 A.2d at 907 ("an attorney can be liable for injuries to third parties when his conduct is fraudulent or malicious. . . . This exception is limited, however, to protect the attorney-client relationship.") (citations and quotations omitted); Winters, 977 P.2d at 1225 ("In some instances the liability of an attorney to a third party may be recognized on the theory that the attorney's employment constituted a third-party beneficiary contract").

Based on the facts alleged, Plaintiffs' recourse is a cause of action against the AOAO or a challenge to the statute itself. Plaintiffs have not alleged, in Count Four, that Neeley did anything more than perform legal services for the AOAO for which the AOAO incurred legal fees, and which the AOAO, in turn, sought

to recover from Plaintiffs as permitted by Haw. Rev. Stat. § 514A-94(a).

**B.    Neeley's Alleged Actions Could Not Cause "Serious Emotional Distress"**

Even if Plaintiffs were able to allege a duty owed by Neeley to Plaintiffs, Neeley's alleged actions do not, as a matter of law, cause "serious emotional distress" – the second element of an NIED claim.  In Rodriques v. State, 472 P.2d 509, 520 (Haw. 1970), the Hawaii Supreme Court found that serious mental distress may be found where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case.  See Masaki v. General Motors Corp., 780 P.2d 566, 576 (Haw. 1989) (same). In Tseu, 962 P.2d 344, the Hawaii Supreme Court applied the reasonable person standard to dismiss an NIED claim.  In Tseu, the counterclaimant alleged that she suffered NIED as a result of (1) an unwarranted lawsuit by the Hawaii Civil Rights Commission ("HCRC") and (2) the contents of a letter sent by the HCRC to her proposing a conciliation settlement.  Id. at 352. The court held that plaintiff had failed to allege conduct which would, as a matter of law, meet the standard for maintaining an NIED action. Id.  Similarly, in Soone, 353 F. Supp. 2d at 1117, the Court applied the reasonable person standard established in Rodriques to deny plaintiff's NIED claim.  In Soone, after the plaintiff

19

had lost his job, the plaintiff brought an Americans with Disabilities Act claim.  In denying plaintiff's NIED claim, the Court held that "[r]easonable, normally constituted men can and do adequately cope with the mental stress engendered by the unfortunate, but not uncommon, experience of losing a job."  Id. at 1118.

Plaintiffs have similarly failed to allege facts which would establish an NIED claim in this case.  Neeley represented the AOAO in the collection of outstanding association fees.  In doing so, Neeley charged the AOAO legal fees which are recoverable against Plaintiffs under Haw. Rev. Stat. § 514A.  Although the collection of these fees may have caused Plaintiffs a financial hardship, such a hardship is not something with which reasonably constituted people would be unable to cope.

Plaintiffs' NIED claim, in Count Four, as to Neeley is **DISMISSED** because Plaintiffs have not alleged any basis for a duty owed by Neeley to Plaintiffs, and Neeley's actions, as alleged, could not, as a matter of law, have resulted in "serious emotional distress".  Because the Court dismisses Plaintiffs' NIED claim as to Neeley on these two grounds, it need not reach the issue of whether Plaintiffs have sufficiently alleged a physical injury resulting from serious emotional distress.

**Count Six - Wrongful Foreclosure Against All Defendants**

20

Plaintiffs allege that they "are entitled to actual damages against all Defendants for damages resulting from the wrongful and erroneous liening of [the Subject Property], for the slander of their title thereby, and for the filing of a wrongful foreclosure suit as aforesaid, . . . " (Compl. ¶ 34.)

Plaintiffs' wrongful foreclosure claim has no factual basis. First, Neeley acted as counsel for the AOAO in filing the foreclosure lawsuit. As discussed above, Neeley was performing its job as counsel for the AOAO. Neeley did not owe Plaintiffs, its client's adversary with regard to the foreclosure lawsuit, a duty of care. See Winters, 977 P.2d at 1225 (attorney for wife owed no duty to ex-husband and thus could not be liable in negligence for filing of wrongful lien against ex-husband's property).

Second, Plaintiffs admit that they were delinquent in paying outstanding, albeit disputed, maintenance fees and related attorneys' fees. (Compl. ¶¶ 6-7, 9.) Under Haw. Rev. Stat. § 514A-90(a), the AOAO had a right to lien Plaintiffs' property for unpaid maintenance and reasonable attorneys' fees. Neeley filed a lawsuit to foreclose the lien on behalf of the AOAO. Although Plaintiffs challenge the constitutionality of the statute, based on the facts alleged by Plaintiffs, Neeley's filing of a foreclosure lawsuit on behalf of the AOAO was not wrongful as a matter of law under the current statutory scheme. See McElroy v.

21

Chase Manhattan Mortg. Corp., 36 Cal. Rptr. 3d 176, 180-81 (Cal.
App. 4 Dist. 2005) (plaintiff failed to state wrongful
foreclosure claim where foreclosure was proper).

Neeley's alleged actions do not constitute slander of title.
"Trade libel or disparagement means 'the publication of matter
disparaging the quality of another's land, chattels or intangible
things, that the publisher should recognize as likely to result
in pecuniary loss to the other through the conduct of a third
person in respect to the other's interests in the property.'"
Hawaiian Insurance & Guaranty Co., Ltd. v. Blair, Ltd., 726 P.2d
1310, 1315 (Haw. App. 1986) (citing Restatement (Second) of Torts
§ 626 (1977)) (footnote omitted).  "At a minimum, a claim for
trade libel or disparagement requires (1) a publication; (2)
which induces others not to deal with plaintiff; and (3) special
damages."  Id. (citation and quotation omitted).  Further,
essential to a slander of title claim is that the matter
published be untrue.  See Engstrom v. Kallins, 56 Cal. Rptr. 2d
842, 849, n.12 (Cal. App. 2d Dist. 1996) ("[s]lander of title is
a false and unprivileged disparagement, oral or written, of the
title to real or personal property, *resulting in actual pecuniary
damage."* (citations omitted; emphasis original); Schwab v. City
of Seattle, 826 P.2d 1089, 1092 (Wash. App. 1992) (plaintiff had
burden of proving lis pendens filed on the property was "false");
Pisano v. Taggart, 105 Cal. Rptr. 414 (Cal. App. 1st Dist. 1972);

22

Prosser on Torts, § 128 at 915 (4th ed. 1971).

In this case, the "publication" was the filing of the lien and foreclosure action.  Based on the facts alleged, it is undisputed that the AOAO had a statutory right to file a lien and foreclosure action.  Plaintiffs cannot show that the filing of the lien and foreclosure action was "false" or improper because it was sanctioned by existing law

Moreover, Plaintiffs have failed to allege special damages. Haw. R. Civ. P. 9(g) and Fed. R. Civ. P. (9)(g) both require that "[w]hen items of special damage are claimed, they shall be specifically stated." "[S]pecial damages are those damages which are of a relatively unusual kind and which, without specific notice to the adversary, may not be understood to be part of the claim."  Ellis v. Crockett, 451 P.2d 814, 819 (Haw. 1969)

Plaintiffs allege actual damages in their wrongful foreclosure count (Compl. ¶ 34) and "special damages according to proof at trial" in their prayer for relief.  Plaintiffs fail to explain exactly what kind of special damages they seek.  See Dunbar v. Thompson, 901 P.2d 1285, 1294 (Haw. App. 1995) ("Special damages are often considered to be synonymous with pecuniary loss and include such items as medical and hospital expenses, loss of earnings, and diminished capacity to work.").

Plaintiffs' wrongful foreclosure/slander of title claim, in

23

Count Six, as to Neeley is **DISMISSED WITH PREJUDICE** because
Neeley did not owe Plaintiffs a duty of care and under Haw. Rev.
Stat. § 514A-90(a) and, even if Neeley could somehow be liable
for representing the AOAO, based on the facts alleged, the AOAO
had a right to lien Plaintiffs' property for unpaid maintenance
and reasonable attorneys' fees.  Plaintiffs have also failed to
allege special damages.

**Count Seven - Unfair and Deceptive Acts and Practices Against All Defendants**

Plaintiffs allege that Defendants' actions "constitute
unfair and deceptive acts and practices, for which [Plaintiffs]
are entitled to treble their actual damages . . . " (Compl. ¶
35.)

Haw. Rev. Stat. § 480-2(a) provides that "[u]nfair methods
of competition and unfair or deceptive acts or practices in the
conduct of any trade or commerce are unlawful."  "Any consumer
who is injured by any unfair or deceptive act or practice
forbidden or declared unlawful by section 480-2 . . . [m]ay sue
for damages sustained by the consumer. . . ."  Haw. Rev. Stat. §
480-13(b).  Generally, "[t]he elements necessary to recover on an
unfair or deceptive trade acts or practices claim under HRS §
480-13(b)(1) are: (1) a violation of HRS § 480-2; (2) injury to
the consumer caused by such a violation; and (3) proof of the
amount of damages."  <u>Davis v. Wholesale Motors, Inc.</u>, 949 P.2d

24

1026, 1038 (Haw. App. 1997).

Neeley contends that Plaintiffs are not "consumers" as is required to bring an unfair and deceptive trade practices claim under Hawaii Revised Statutes, Chapter 480.  Haw. Rev. Stat. § 480-1 defines "consumer" as "a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment." There is a good argument that Plaintiffs do not fall within the statutory definition of "consumer" since they did not purchase goods or services from Neeley.  The Court need not reach the issue of whether Plaintiffs are consumers.  Plaintiffs contend that, under the facts of this case, they can bring an unfair and deceptive trade practices claim regardless of whether they are "consumers" as defined by Haw. Rev. Stat. § 480-1.

In particular, Plaintiffs contend that they have alleged an unfair and deceptive trade practices violation under Chapter 480 based on the theory that Neeley was acting as a debt collector in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA").  In Guerrero v. RJM Acquisitions, 2004 U.S. Dist. LEXIS 15416, at *44 (July 9, 2004), this Court held that a violation of the FDCPA established a violation of Chapter 480's prohibition against unfair and deceptive trade practices. Id. at *44.  In other words, under Guerrero, allegations

25

sufficient to establish a violation of the FCDPA would likewise be sufficient to establish a violation of Haw. Rev. Stat. 480-2.[1]

While, in their Opposition, Plaintiffs argue that Neeley engaged in wrongful debt collection practices, Plaintiffs' Complaint is deficient.  Plaintiffs' Complaint makes only the naked contention that Neeley committed unfair and deceptive trade practices. (Compl. ¶ 35.)  The Complaint does not allege that Neeley acted as a debt collector or that Neeley engaged in wrongful debt collection practices in violation of the FDCPA.

Although the Federal Rules of Civil Procedure adopt a flexible pleading policy, every complaint must, at a minimum, give fair notice and state the elements of each claim against each defendant plainly and succinctly.  <u>Jones v. Community Redevelopment Agency</u>, 733 F.2d 646, 649 (9th Cir. 1984) (citation and quotation omitted).  The Complaint does not put Neeley on notice of Plaintiffs' theory of liability in support of their unfair and deceptive trade practices claim.  If Plaintiffs' theory is based on Neeley's alleged violation of the FDCPA, Plaintiffs must allege the elements of a cause of action under the FDCPA.

---

[1] Haw. Rev. Stat. § 443B-20, prohibiting unfair debt collection practices by collection agencies similarly provides: "A violation of this chapter by a collection agency shall constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce for the purpose of section 480-2."

Moreover, Plaintiffs' unfair and deceptive trade practices claim is a fraud based claim that must be pled with particularity as required by Federal Rule of Civil Procedure 9(b).  Williamson v. Allstate Insurance Co., 204 F.R.D. 641, 644 (D. Ariz. 2001) (requirement that fraud be pled with particularity applied to claims under Arizona Consumer Fraud Act and Arizona Unfair Claims Practice Act; "The plain language of Rule 9(b) requires a plaintiff to plead 'all' averments of fraud with particularity.") (quoting In re GlenFed Inc. Sec. Litig., 42 F.3d 1541, 1545 n.3 (9th Cir. 1994) ("we are not free to override the clear language of Rule 9(b), which refers unequivocally to 'fraud', and makes no distinction between common law fraud and modern statutory causes of action based on fraud"); see In re Daou Systems, Inc. 411 F.3d 1006, 1027 (9th Cir. 2005), cert. denied, __ U.S. __, 126 S. Ct. 1335 (2006) (plaintiff may be subject to Fed. R. Civ. P. 9(b)'s particularity mandate where his complaint "sounds in fraud").  Fed. R. Civ. P.  9(b) requires that the plaintiff's allegations "be specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong."  Vess v. Ciba-Geigy Corp. U.S.A., 317 F.3d 1097, 1106 (9th Cir. 2003).  Complaints alleging fraud must: (1)

27

"state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud" Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994); and (2) "set forth an explanation as to why the statement or omission complained of was false or misleading" Yourish v. California Amplifier, 191 F.3d 983, 993 (9th Cir. 1999).  See Vess, 317 F.3d at 1106 (plaintiff must set forth " 'the who, what, when, where and how' of the alleged misconduct.").  Plaintiffs have not stated their unfair and deceptive trade practices claim with particularity.

Plaintiffs' unfair and deceptive trade practices claim, in Count Seven, is **DISMISSED** because they have not alleged an unfair and deceptive trade practices claim with particularity.

**Count Eight - Breach of Good Faith and Fair Dealing Against All Defendants**

Plaintiffs allege that Defendants' actions "constitute breaches of good faith and fair dealing, implied covenants within the terms and conditions of said CONDOMINIUM DOCUMENTS, entitling [Plaintiffs] to an award of their actual damages, . . . " (Compl. ¶ 36.).   The duty of good faith and fair dealing arises from a contract.  See Best Place, Inc. v. Penn American Ins. Co., 920 P.2d 334, 345 (Haw. 1996) ("the tort of bad faith is . . . a separate and distinct wrong which results from the breach of a

28

duty imposed as a consequence of a relationship established by contract").  Plaintiffs' Complaint identifies the condominium documents as the relevant contract giving rise to an obligation of good faith and fair dealing.  In their Opposition, Plaintiffs argue that the relevant contract is the contract for legal services between Neeley and the AOAO, of which Plaintiffs are owners/members.  (Plaintiffs' Opp. at 14.)  Plaintiffs argue that they are third party beneficiaries of some sort of general contract for legal services between Neeley and the AOAO.  (Id.)

Plaintiffs have failed to identify a contract, in the Complaint or otherwise, under which Neeley owes them a duty of good faith and fair dealing.  While Neeley and the AOAO may have a general attorney-client relationship as part of which Neeley may provide a variety of legal services for the AOAO, such a relationship does not make Plaintiffs third party beneficiaries in this instance.  As discussed above, Neeley represented the AOAO in a matter directly adverse to Plaintiffs.  Neeley cannot owe a duty of good faith and fair dealing to Plaintiffs when it is representing a client with interests directly adverse to Plaintiffs.  Any such duty would directly conflict with Neeley's duty to the AOAO.

Plaintiffs' breach of good faith and fair dealing claim, in Count Eight, as to Neeley is **DISMISSED WITH PREJUDICE** because Plaintiffs have failed to identify a contract under which Neeley

owes them a duty of good faith and fair dealing and, in any
event, Neeley cannot owe a duty of good faith to Plaintiffs when
representing a client with directly adverse interests.

### CONCLUSION

For the foregoing reasons,

Neeley's Motion for Partial Dismissal of Complaint (Doc. 4)
is **GRANTED**.

**Count Three**, Plaintiffs' IIED claim, is **DISMISSED** as to
Neeley because they have not alleged any facts which would make
Neeley's attempt to enforce the AOAO's right to collect fees as
permitted by Chapter 514A "outrageous".

**Count Four**, Plaintiffs' NIED claim, is **DISMISSED** as to
Neeley because Plaintiffs have not alleged that Neeley owed
Plaintiffs a duty, Neeley's actions, as alleged, could not, as a
matter of law, have resulted in "serious emotional distress", and
Plaintiffs have not sufficiently alleged a physical injury
resulting from serious emotional distress.

**Count Six**, Plaintiffs' wrongful foreclosure/slander of title
claim is **DISMISSED WITH PREJUDICE** as to Neeley because Neeley did
not owe Plaintiffs a duty of care and, even if Neeley could
somehow be liable for representing the AOAO, under Haw. Rev.
Stat. § 514A-90(a), based on the facts alleged, the AOAO had a

right to lien Plaintiffs' property for unpaid maintenance and reasonable attorneys' fees.  Plaintiffs also failed to allege special damages.

**Count Seven**, Plaintiffs' unfair and deceptive trade practices claim is **DISMISSED** as to Neeley because Plaintiffs have not alleged an unfair and deceptive trade practices claim with particularity.

**Count Eight**, Plaintiffs' breach of good faith and fair dealing claim is **DISMISSED WITH PREJUDICE** as to Neeley because Plaintiffs have failed to identify a contract under which Neeley owes them a duty of good faith and fair dealing and, in any event, Neeley cannot owe a duty of good faith to Plaintiffs when representing a client with directly adverse interests.

The Court **GRANTS** Plaintiffs leave to amend their Complaint as to Counts Three, Four, and Seven within thirty (30) days from the date of this Order, until September 25, 2006.  If Plaintiffs do not amend by September 25, 2006, Counts Three, Four, and Seven

//

//

//

//

//

31

```
//
```

will be dismissed with prejudice.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 24, 2006.



    /s/ Helen Gillmor
Chief United States District Judge

Ronnie Decartes Johnson, et al. v. Association of Apartment Owners of Ke Aina Kai Townhomes, et al.; Civ. No. 06-00106 HG-KSC; **ORDER GRANTING DEFENDANT NEELEY & ANDERSON LLP'S MOTION FOR PARTIAL DISMISSAL OF COMPLAINT**